# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN W. FINK, | Civil No. 09-5078 |
| Plaintiff, | (NLH)(KMW) |
| v. | **OPINION** |
| EDGELINK, INC., and KAYDON A. STANZIONE, Defendants. | |

JOHN W. FINK
6812 YELLOWSTONE BLVD.
FOREST HILL, NY 11375
    Appearing *pro se*

KURT E. KRAMER
EDWARD T. FISHER
WHITE AND WILLIAMS
457 HADDONFIELD ROAD
SUITE 400
CHERRY HILL, NJ 08002
    On behalf of EdgeLink, Inc.

GARY M. MAREK
LAW OFFICES OF GARY M. MAREK
7008 NORMANDY DRIVE
MOUNT LAUREL, NJ 08054
    On behalf of Kaydon A. Stanzione

**HILLMAN, District Judge**

    This dispute concerns plaintiff's claims that defendants are obligated to pay on contracts plaintiff entered into with an alleged predecessor company of defendants.  Presently before the Court are the motions of the defendants for summary judgment in

their favor on all of plaintiff's claims against them.[1]  For the reasons expressed below, defendants' motions will be granted.

### BACKGROUND[2]

In 2000, plaintiff, John W. Fink, began working as a financial consultant for Advanced Logic Systems, Inc. ("ALSI"), which was founded by defendant, Kaydon Stanzione.  A year later, Fink entered into a series of credit agreements with ALSI to provide working capital to the company's operations.  Fink provided over $500,000 to ALSI, and in return, he received rights to purchase a certain amount of stock in ALSI.

Eventually the financial condition of ALSI deteriorated. Fink ceased providing consulting services, and in March 2003, he ultimately filed suit against ALSI, Stanzione and other related entities in New Jersey Superior Court, claiming breaches of the various credit agreements, as well as fraud.  Three years later, the parties entered into a settlement agreement.  A year after that, in May 2007, a hearing was held in state court regarding Fink's claims that the state court defendants had breached their settlement agreement.  The matter was referred to binding arbitration, and in July 2008, the arbitrator issued his decision, wherein the arbitrator found that ALSI did not breach

---

[1]Also pending is plaintiff's motion to seal portions of the record, which will be denied as moot.  See *infra* note 4.

[2]The background facts are gathered from plaintiff's complaint.

the settlement agreement, but that ALSI owed Fink fees in his enforcement of the agreement, and the case was reactivated in state court.

Ultimately, ALSI filed for bankruptcy in October 2008, and Fink's state court case was dismissed without prejudice.  Around this same time, ALSI failed to make a scheduled repayment to Fink, and Stanzione, as guarantor of the agreement, owed $100,000 to Fink.

On January 27, 2009, defendant, EdgeLink, Inc., was incorporated.  Fink claims that ALSI's proceeds and assets were fraudulently transferred to Advanced Logic Systems, Inc., a corporation set-up by Kaydon Stanzione in his mother Katherine's name, in June 2005, and then upon her death in December 2008, were transferred to EdgeLink as a means of depriving Fink of his rightful ownership in ALSI's assets.

As a result, Fink has brought claims against EdgeLink for breach of contract for two agreements Fink entered into with ALSI: (1) the warrant agreement (which included a methodology for calculating the price per share of ALSI common stock and the number of shares being offered to sale to Fink), and (2) the settlement agreement.  Fink claims that EdgeLink is liable for these breaches because it is a "mere continuation of" or a "defacto merger with" ALSI.

Fink has also brought claims for unjust enrichment against

EdgeLink.  He also claims that the transfer of substantially all of ALSI's assets to EdgeLink violated New Jersey's Fraudulent Transfer Act, N.J.S.A. 25:2-25 et seq., and that EdgeLink and Stanzione are liable to Fink for this fraudulent transfer. Finally, Fink claims that Stanzione breached his fiduciary duties he owed to Fink as a creditor of ALSI.

Since the filing of his complaint against EdgeLink and Stanzione in October 2009, the parties have engaged in extensive discovery, and have provided this Court with voluminous correspondence,[3] briefing, and exhibits relating to various discovery motions, as well as motions relating to Fink's legal representation, which have resulted in Fink's current *pro se* status after the termination of five law firms.  After other protracted proceedings, the defendants' motions for summary judgment are now ripe for consideration.[4]

_____

[3]On October 24, 2011, this Court admonished the parties to stop sending unauthorized letters to the Court.  (Docket No. 134).

[4]Following a hearing with this Court on September 16, 2011 during which the Court granted Fink's attorney's motion to be relieved as counsel, the Court permitted Fink to submit a brief and other supporting documents to supplement the opposition to defendants' motions for summary judgment that his counsel had previously filed.  (See Docket No. 125.)  Defendants had already filed their reply briefs to the opposition Fink's former counsel had prepared, and they were not permitted to respond to Fink's supplemental materials, which are voluminous.  (See Docket Nos. 134, 130.)   Contemporaneous with filing his supplemental materials, Fink filed a motion to seal portions of those materials because he was unclear about the scope of the parties' confidentiality order.  (See Docket No. 131.)  In resolving

4

What this case boils down to is whether Fink has provided sufficient evidence to refute EdgeLink and Stanzione's position that they cannot be held liable for the conduct of ALSI.  As explained below, Fink has failed to do so.

## DISCUSSION

### A.   Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

### B.   Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such

---

defendants' motions for summary judgment, all materials sent to the Court have been reviewed.  Because the redacted documents filed on the docket by Fink appear sufficient to comply with the protective order, those documents do not need to be filed in their unredacted form.  Consequently, Fink's motion to seal will be denied as moot.

that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C.   Analysis**

As stated above, Fink's claims against EdgeLink and Stanzione arise out of his relationship with the now-defunct ALSI.  Believing that (1) he is still entitled to money from that failed relationship,[5] (2) he did not get the relief he desires from his prior litigation[6] with ALSI and related parties, and (3) ALSI and Stanzione transferred ALSI's assets--now owed to Fink-- to EdgeLink to avoid payment to Fink, Fink has brought claims for breach of contract, fraud, unjust enrichment, and breach of fiduciary duty, against EdgeLink and Stanzione.  The problem with Fink's claims, however, is that he has provided no evidence to support any successor liability or fraudulent transfer that would tie EdgeLink or Stanzione to ALSI's liabilities to Fink.

In order to hold EdgeLink liable for ALSI's alleged breach of its warrant agreement and settlement agreement with Fink, Fink must show that EdgeLink is a successor company to ALSI, or

---

[5]Under the stipulation of settlement between Fink, ALSI and Stanzione, as personal guarantor, in the state court action, Fink received $524,398.90 in installment payments toward the agreed upon $1 million settlement amount prior to ALSI's bankruptcy. (Stanzione Decl. at 5-6.) In this case, Fink claims that he is owed $58 million for ALSI's breach of the warrant agreement, and an additional $2.6 million for ALSI's breach of the settlement agreement.  (Pl. Opp. Br. at 1.)

[6]Defendants point out that six other actions have involved Fink's issues arising out his business relationship with ALSI. (See, e.g, Stanzione SOMF ¶ 2.)

somehow otherwise responsible for ALSI's obligations.[7]  To do so, the key element Fink must first prove is a transfer of assets, either legitimate or fraudulent, from ALSI to EdgeLink.  <u>See</u> <u>Colman v. Fisher-Price, Inc.</u>, 954 F. Supp. 835, 838 (D.N.J. 1996) (quoting <u>Ramirez v. Amsted Indus., Inc.</u>, 431 A.2d 811, 816 (N.J. 1981)) (explaining that under New Jersey corporate law, "'where one company sells or otherwise transfers all its assets to another company'" the traditional approach was that "'the latter is not liable for the debts and liabilities of the transferor, including those arising out of the latter's tortious conduct,'" except for four limited exceptions); N.J.S.A. 25:2-25 ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation . . . .").

Fink claims that ALSI's proceeds and assets were fraudulently transferred to Advanced Logic Services, Inc. ("ALServ"), a corporation set-up by Kaydon Stanzione in his

---

[7]Defendants argue that Fink's claims also fail on *res judicata* principles.  Because the Court finds that Fink has failed to offer sufficient facts to support his claims, the Court will not determine whether Fink's claims are otherwise precluded because of prior litigation.

mother Katherine's name, in June 2005, and then upon her death in December 2008, were transferred to EdgeLink after its creation in January 2009 as a means of depriving Fink of his rightful ownership in ALSI's assets.[8]   Fink, however, has not provided any evidence showing a transfer of any asset from ALSI to ALServ, and then from ALServ to EdgeLink.

Instead, arguing that he cannot prove concretely the asset transfer because "Stanzione orchestrated the asset-personnel-customer slide to EdgeLink as far under the radar as he could push it," (Docket No. 101 at 31), Fink attempts to show that because the technology EdgeLink owns is the same that was used by ALSI, and that EdgeLink has the same "principal functionaries" and customers as ALSI, a jury could conclude that ALSI's assets were transferred to EdgeLink.   Fink's position is unpersuasive.

First, as noted by the defendants, personnel of a company are not "assets" within the context of establishing successor liability or fraud.   See, e.g., Portfolio Financial Servicing Co. ex rel. Jacom Computer Services, Inc. v. Sharemax.com, Inc., 334 F. Supp. 2d 620, 625 (D.N.J. 2004) (distinguishing "assets" from "management" and "personnel").   Thus, even if Fink could show the

---

[8]In his October 11, 2011 supplemental brief, Fink claims that it is obvious that Stanzione--or someone else--forged Katherine Stanzione's name on ALServ's incorporation documents. Defendants were not provided with the opportunity to respond to that claim, and the Court finds that claim to be an unsupported assumption rather than a controverted fact.

two companies shared employees,[9] that does not evidence any transfer of assets for successor liability or fraudulent transfer purposes.[10]

Second, Fink's attempt to prove that ALSI's assets in its technology were transferred to EdgeLink is similarly unsupportable.  Fink argues that EdgeLink's May 2009 website provides "the most comprehensive source of the rebranded ALSI products," and he describes how the ALSI-ALServ products, as they were described on ALSI's 2007 website, mirror the products listed on EdgeLink's website.  (Pl.'s Oct. 14, 2011 Br. at 7.)  For example, Fink contends that ALSI's statement, "ALSI has developed the Alert Notification and Incident Command Systems (ANICS™)," is the same product described on EdgeLink's webpage, "HD-911 for

---

[9]Fink and defendants both take great pains to explain how the personnel of the two companies are identical or completely different, respectively.  We assume for purposes of the present motions that Fink, the non-moving party, could prove an overlap of employees.

[10]One exception to the general rule--that when one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor--is that the purchasing corporation is merely a continuation of the selling corporation, which can be evidenced by a continuity of personnel and general business operations.  See Portfolio Financial Servicing Co. ex rel. Jacom Computer Services, Inc. v. Sharemax.com, Inc., 334 F. Supp. 2d 620, 625 (D.N.J. 2004).  In order for this exception to apply, however, one company must have actually sold or transferred its assets to another company, in addition to the retention of the same employees.  Fink's argument about the continuity of personnel skips the first step of showing an actual asset transfer.  See also infra note 16.

incident command and alert notifications."  (Id.)  Fink lists
other similarities, and more generally describes that EdgeLink's
"HeteroDyne HD" services for alert notification and monitoring
services as the same as ALSI's ANICS, only renamed.  (Pl.'s
August 8, 2011 Br. at 17-23.)

Even if a jury could make the same observations as Fink[11]
regarding the similarities in product services that ALSI offered
in 2007, and EdgeLink purported to offer on its May 2009 website,
those observations do not evidence that ALSI had tangible
technology rights that were transferred to EdgeLink.  To the
contrary, as shown by defendants, the technology used by ALSI
that purportedly mirrors EdgeLink's services was either "open-
source" or used pursuant to licensing or reseller agreements.
Additionally, the defendants explain that the services intended
to be offered by EdgeLink, but never realized, "would have been
to supplement the readily available third-party notification
system with the mobile asset tracking capability that it had
under development but that was not yet commercially available."
(EdgeLink SOMF ¶ 96.)  Simply because these two companies
appeared to provide similar services by the descriptions on their
websites does not demonstrate the requisite asset transfer
necessary to establish that ALSI transferred assets to EdgeLink.

Third, the evidence in the record concerning ALSI's and

_____

[11]But see, infra, page 16, note 15.

EdgeLink's financial situations do not reveal any asset transfers, either legitimate or fraudulent.  EdgeLink demonstrates that its only asset is a laptop computer, it has never sold, licensed or leased any tangible or intangible assets, it does not have any licensing or purchasing agreements with third parties for computer software, and as of October 31, 2010, its total expenditures over revenues was $(232,880.00). (EdgeLink SOMF ¶¶ 81-90.) Fink has not provided any evidence to refute this.[12]

---

[12]In his supplemental materials, Fink claims that he cannot fully prove ALSI's transfer of assets to EdgeLink because EdgeLink's general ledger had been accidentally destroyed by EdgeLink's accounting firm and no back-up exists.  Fink argues that he is entitled to an adverse inference of spoliation at trial, because that general ledger would have shown, among other things, that EdgeLink has manufactured fraudulent documents in this case, and it has had more than one bank account, which would reveal business activity damaging to EdgeLink's case.  (Pl.'s Oct. 14, 2011 Br. at 16-17.)

The deposition of EdgeLink's accountant, Joseph Troupe, explains how the electronic ledger was accidentally overwritten and corrupted.  (Docket No. 103-6 at 174-184.)  Troupe also explains that the general ledger is just a categorical summary of all the checks issued on the account, and because all the checks (108 of them) had been produced in discovery, the ledger could be recreated.  (Id.)

"When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995). "For the rule to apply, it is essential that the evidence in question be within the party's control.  Further, it must appear that there has been an actual suppression or withholding of the evidence.  No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is

With regard to ALSI's financial situation and its alleged
transfer of assets, at the time Fink claims that ALSI's assets
were funneled through ALServ to EdgeLink, ALSI was in the middle
of its bankruptcy proceedings.  During the proceedings, the
bankruptcy court appointed a trustee, who made a "diligent
inquiry into the financial affairs of the debtor and the location
of the property belonging to the estate."  (Stanzione Ex. Q,
Docket Entry in 08-bk-31052, dated August 8, 2009.)  Fink has not
provided any evidence that the bankruptcy trustee discovered any
asset transfers by ALSI--during or prior to its bankruptcy
filing--to avoid its creditors,[13] or any record of ALSI's assets
being legitimately transferred to ALServ.  Moreover, Fink's $1.2

_____

otherwise properly accounted for."  Id. (citations omitted).
     Fink has not demonstrated that the general ledger (1) would
have shown EdgeLink's fraudulent activity, (2) that EdgeLink
intentionally destroyed the document, or (3) that it cannot be
recreated.  The fact that the general ledger was destroyed--
without more-does automatically raise the inference that it
contained evidence of nefarious activity.

     [13]It would have been a crime if anyone connected with ALSI
had done so.  See 18 U.S.C. § 152(1),(7). (providing that a
person shall be fined, imprisoned not more than 5 years, or both:
"who knowingly and fraudulently conceals from a custodian,
trustee, marshal, or other officer of the court charged with the
control or custody of property, or, in connection with a case
under title 11, from creditors or the United States Trustee, any
property belonging to the estate of a debtor," or "who . . . in a
personal capacity or as an agent or officer of any person or
corporation, in contemplation of a case under title 11 by or
against the person or any other person or corporation, or with
intent to defeat the provisions of title 11, knowingly and
fraudulently transfers or conceals any of his property or the
property of such other person or corporation . . . .").

million lien on ALSI's assets, as well as the existence of
ALServ, were recognized by the bankruptcy court. (Id. Ex. P.)
Thus, ALSI's oversight by a trustee and the bankruptcy court,
with the trustee's and bankruptcy court's knowledge of Fink's
claim and the allegedly fraudulently created ALServ, do not
support Fink's claim of ALSI's transfer of assets.

Finally, Fink's attempt to show how EdgeLink's customers
were the same as ALSI's fails to demonstrate a transfer of assets
in that customer information.  Although where "a company's
business is to provide services, information about customers is a
property right of the company," this is because "the names and
addresses of its customers are not open to and ascertainable by
every one; they are the private information and property of the
company." AYR Composition, Inc. v. Rosenberg, 619 A.2d 592, 597
(N.J. Super. Ct. App. Div. 1993) (citations omitted).  In this
case, Fink alleges that customers listed on EdgeLink's website
are the same as those serviced by ASLI, and that ASLI transferred
its customers--as an asset--to EdgeLink.  In addition to the
defendants' proof that shows that these customers, among others
not listed on EdgeLink's site, were not shared, those customers
cannot be considered an "asset" because they were revealed openly
to the world.[14]

_____

[14]Fink argues that Holt Logistics was a former customer of
ALSI that used the ANICS system and then became a customer of
EdgeLink.  (See Oct. 14, 2011 Br. at 29-30.)  As defendants

Recognizing that he cannot show concretely any asset transfers from ALSI to EdgeLink, Fink, in his final submission to the Court, asks the Court to consider all the evidence together as a whole--the entirety of the circumstances--to create a "broad definition" of a transfer. (Pl.'s Oct. 14, 2011 Br. at 44.)  To summarize his arguments that are parsed out above, Fink argues that ALSI claimed to own proprietary technology prior to its bankruptcy, it did not have that technology at the time of its bankruptcy filing, but it later turned up on EdgeLink's website in a rebranded form.  Fink contends that EdgeLink serviced the same customers as ALSI, and some of ALSI's key players were also involved in EdgeLink's operations.  He also places strong weight on a May 2009 internet-posted resume of an EdgeLink consultant who referenced he did work for "EdgeLink (formerly ALSI)." (Docket No. 105-5.)  These allegations, along with a missing general ledger, an alleged forged signature of Stanzione's mother in setting up ALServ, and defendants' alleged self-serving certifications and lies during depositions, Fink contends demonstrate that EdgeLink is ALSI, and, therefore, EdgeLink and Stanzione owe what Fink believes he is due under his contracts with ALSI.

---

demonstrate, and the email correspondence relied upon Fink supports, Holt used ANICS through a contract with ADT, that service ended, and EdgeLink attempted to offer Holt a newer technology, but that business arrangement was never consummated.

The Court recognizes that there is a lot of bad blood between the parties involved in this litigation and the lawsuits that precede this case.  The Court also recognizes that Fink strongly believes that he was defrauded of money that he is contractually owed from his business relationship with ALSI.  The Court does not discount the sincerity or strength of Fink's beliefs.  But fervor and allegations are not substitutes for admissible proof.  Other than Fink's own interpretation of how the ALSI puzzle pieces have reassembled to form EdgeLink,[15] Fink has not provided sufficient evidence to refute the defendants' showing that no assets were transferred from one entity to the other so that successor liability would attach.[16]

---

[15]The Court does not suggest that an expert opinion would save Fink's case.  Fink states in his October 14, 2011 supplemental brief that he has not provided an expert report, but that he "might do so."  (Br. at 32.)  Even though the magistrate judge ordered that the issue of expert reports and disclosures would be determined after the resolution of any summary judgment motions, (Docket No. 69, January 25, 2011), that did not preclude Fink from obtaining an expert during the two years between the filing of his complaint and defendants' filing of their summary judgment motions.  As documented in the parties' briefs, extensive discovery has been completed in this case, including 34 non-party subpoenas issued by Fink, and numerous depositions.  It is Fink's burden to prove the claims in his complaint, and to withstand a properly filed motion for summary judgment.

[16]Fink relies upon Marshak v. Treadwell, 595 F.3d 478, 490 (3d Cir. 2009) and Merrill Lynch Business Financial Services, Inc. v. Kupperman, 441 Fed. Appx. 938, 941 (3d Cir. 2011) to support the finding that EdgeLink was a "mere continuation" of ALSI.  Neither case helps Fink.  The Marshak case concerned whether an injunction and contempt order entered against one company could be imposed against two other companies.  The Third Circuit affirmed the district court's imposition of the

The original purpose behind imposing liability onto a successor company was to protect consumers: if the selling company dissolves after its assets are acquired by a successor, a plaintiff injured by a defective product manufactured by the selling company is left without a remedy. LaPollo by LaPollo v. General Elec. Co., 664 F. Supp. 178, 180 (D.N.J. 1987); Cherry Hill Fire Co. No. 1 v. Cherry Hill Fire Dist. No. 3, 646 A.2d 1150, 1153 (N.J. Super. Ch. 1994) (quoting Parsons Mfg. Co. v. Hamilton Ice Mfg. Co., 73 A. 254 (N.J. 1909) (It is a well known and long standing principle in New Jersey that a corporation 'having taken over the assets of the former company for the purpose of carrying on its business, without apparent change in

---

injunction on the two other companies because it found them to be successors-in-interest: "the personnel of each business were the same, the location of each business was the same, the assets of each business were the same, the general operations of each business were the same, and RCI folded shortly after DCPM was formed." Marshak, 595 F.3d at 490. In Merrill Lynch, "Arthur Kupperman, PITTRA's secretary and treasurer as well as a director and shareholder, created PGB in 2003 and transferred a substantial amount of PITTRA's assets to PGB. PGB operated the same type of business as PITTRA, used the same address, and had the same principals and employees. PITTRA did not inform Merrill of the asset transfer, of the organizational change, or of its ultimate demise." Merrill Lynch, 441 Fed. Appx. at 940. The Third Circuit upheld the district court's finding that PGB was PITTRA's successor: "It is undisputed that PITTRA and PGB were both importers of industrial foods, they were located at the same address, they were operated by the same principals, and there was a transfer of assets from PITTRA to PGB." Id. at 941.

These two cases demonstrate what Fink's case against EdgeLink and Stanzione lacks--evidence of a transfer of assets, which is the primary factor necessary to establish successor liability.

17

the personnel of the concern, is liable for the payment of the debts of the former concern.  It is held to take the benefits and advantages *cum onere* [subject to a charge or burden].'")).  When, however, there are no transfer of assets from one company to another, it is no longer a concern that the company shifted assets to avoid liability.  The new company could run a similar business with many of the same employees, and even the same customers, but without acquiring the assets--such as money, intellectual property, or confidential client lists--of the prior company, it has not taken the benefits which are subject to any attached burdens.  Based on the properly supported evidence presented in this case, that appears to be the situation here.

Because Fink's claims against EdgeLink fail because EdgeLink cannot be considered to be a successor, through legitimate or fraudulent means, to ALSI, Fink's claim against Stanzione for breach of his fiduciary duty, as well as Fink's claims for unjust enrichment, also fail because they are based on the theory that EdgeLink is the successor of ALSI.  Consequently, summary judgment must be entered in defendants' favor on all of Fink's claims against them.  An appropriate Order will be entered.


Date:   March 27, 2012                s/ Noel L. Hillman
                                      NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey


18